UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| QUENTIN L. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-00267-JRO-MKK |
| | ) | |
| TRENT ALLEN, | ) | |
| SHAUER, | ) | |
| SARTEN a.k.a. MS. KNOTTS, | ) | |
| BALLENGER, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER SCREENING COMPLAINT AND
DIRECTING FURTHER PROCEEDINGS**

This present case is the result of Plaintiff Quentin L. Taylor severing various claims from a prior lawsuit in this District, Case No. 1:25-cv-00573-TWP-TAB ("original action"). The original action is a civil rights lawsuit complaining about the lack of medical care he received for his asthma and mental health issues, and his placement and confinement in a restrictive housing unit. Dkt. 1. In the original action, the Court dismissed certain claims, allowed other claims to proceed, and severed the remaining claims under Rule 21 of the Federal Rules of Civil Procedure. Dkt. 3. The Court instructed that the severed claims—that is, the lawsuit that is proceeding under No. 1:26-cv-00267-JRO-MKK—related only to Taylor's placement and confinement in the restrictive housing unit at Pendleton Correctional Facility ("Pendleton") and are against only the following four defendants: (1) Warden Trent Allen; (2) Unit Team

1

Manager Shauer; (3) Case Manager Sarten; and (4) Classification Supervisor Ballenger. *See* dkt. 1 at 4–7; dkt. 3 at 3; *see also* original action dkt. 28 at 3.

The operative pleading in the present case is the complaint filed in the original action, dkt. 1, but only as to these four defendants and only related to allegations of placement and confinement in the restrictive housing unit at Pendleton. Because Taylor is a "prisoner," this Court must screen these allegations before service on the defendants. 28 U.S.C. § 1915A(a), (c).

## I. SCREENING STANDARD

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. THE COMPLAINT

Taylor alleges the following, which the Court assumes to be true for purposes of screening:

In August 2023, Taylor was informed that he was under investigation and was subsequently moved from general population to the restrictive housing unit ("RHU") at Pendleton.  Dkt. 1 at 9.  He was not placed in administrative segregation, but instead was in the punitive disciplinary RHU.  *Id.*  Taylor did not have any segregation time to be served and had not been found guilty of any violations.  *Id.*  He was held here for more than 15 months.  *Id.*  Despite not being charged or sanctioned to serve any disciplinary segregation time, he was subjected to many sanctions and restrictions.  *Id.*  He was denied access to educational programming, job opportunities, certain commissary items, and visitation.  *Id.* at 10.  He also experienced limited recreational activity and religious services, and suffered sensory and human contact deprivation.  *Id.* at 10-11.  Any Indiana Department of Correction ("IDOC") records or official documentation stating that Taylor was being held in the administrative RHU were falsified.  *Id.* at 10.

Taylor contacted Warden Allen, Classification Supervisor Ballenger, Unit Team Manager Shauer, and Case Manager Sarten and requested to be removed from the punitive disciplinary RHU several times.  *Id.* at 11.  He informed them that he did not have any disciplinary segregation time to serve and explained how his mental health was being affected by his placement there.  *Id.*  Taylor filed both grievances and classification appeals to alert the defendants as to his

situation—not only as to the mistaken placement, but also as to his conditions of confinement, serious mental illness, and the deterioration of mental health he was experiencing. *Id.* All of Taylor's communications were denied or ignored. *Id.*

In addition to the limitations he experienced in segregation, Taylor also dealt with black mold in the cell, pest infestation (ants, roaches, and spiders), contaminated water, dirt buildup causing ventilation issues, inadequate clothing to keep him warm during extremely cold temperatures, and lack of air conditioning during extremely warm temperatures, negatively impacting his chronic asthma condition. *Id.* at 11-12.

Taylor sues Warden Trent Allen in his individual and official capacities. Every other defendant is sued only in their individual capacity. He seeks damages.

### III. DISCUSSION OF CLAIMS

Although a plaintiff need not plead legal theories in a complaint, *see* Fed. R. Civ. P. 8(a), Taylor has identified the theories he wishes to use—Eighth Amendment conditions of confinement and Fourteenth Amendment due process and equal protection claims. Where a pro se litigant has expressly stated the legal theories he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595,

4

606-07 (7th Cir. 2009)).  Thus, the Court analyzes Taylor's claims only under the theories he has identified.

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

First, Taylor's official-capacity claim against Warden Allen must be **dismissed**.  Taylor does not seek injunctive relief as related to his claims in this case.  *See Knowlton v. City of Wauwatosa*, 119 F.4th 507, 519 (7th Cir. 2024) ("In an individual capacity suit, a plaintiff may only seek monetary damages; in an official capacity suit, a plaintiff may only seek injunctive or declaratory relief.").

Second, Taylor's Eighth Amendment claims based on conditions of confinement must be **dismissed**.  Eighth Amendment conditions of confinement claims require the plaintiff to allege facts to support two elements.  The first element is "an objective showing that the conditions are sufficiently serious— i.e., that they deny the inmate 'the minimal civilized measure of life's necessities,' . . . creating an excessive risk to the inmate's health and safety." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The second is a "subjective showing of a defendant's culpable state of mind." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Moreover, "individual liability under § 1983. . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted).  "The plaintiff must demonstrate a causal

5

connection between (1) the sued officials and (2) the alleged misconduct." *Id.* For a public official to be individually liable for a subordinate's constitutional violation, the official must both "(1) know about the conduct and (2) facilitate, approve, condone, or turn a blind eye toward it." *Gonzalez v. McHenry County, Ill.*, 40 F.4th 824, 828 (7th Cir. 2022). Here, Taylor alleges that he grieved his conditions of confinement: black mold in the cell, pest infestation (ants, roaches, and spiders), contaminated water, dirt buildup causing ventilation issues, inadequate clothing to keep him warm during extremely cold temperatures, and lack of air conditioning during extremely warm temperatures. Dkt. 1 at 11. However, Taylor has not alleged any facts plausibly supporting the inference that defendants in this case were aware of these conditions or denied any of his grievances in relation to these conditions.

Third, any *Monnell* claim against Warden Allen must be **dismissed**. More than likely, this claim is related solely to the original action and not his severed claims. But to the extent he intended to bring it in the severed action, it fails for the same reasons identified in Judge Pratt's screening order in the original action. *See* original action dkt. 9 at 9. A *Monell* claim against Warden Allen in his official capacity as an employee of the Indiana Department of Correction would in essence be against the State of Indiana. The Eleventh Amendment prohibits such claims against a state or its agencies. *See Joseph v. Board of Regents of University of Wisconsin System*, 432 F.3d 746, 748-49 (7th Cir. 2005) ("The Court has been clear, however, that *Monell*'s holding applies only to municipalities and not states or states' departments.") (citing *Will v. Michigan*

*Dept. of State Police*, 491 U.S. 58, 70 (1989) ("[W]e consequently limited our holding in *Monell* to local government units which are not considered part of the state for Eleventh Amendment purposes.") (internal quotation marks omitted)).

With respect to the Fourteenth Amendment Equal Protection claims, the constitution protects one from disparate treatment based on membership in a protected class. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). To state an Equal Protection claim, Taylor must allege that (1) he was a member of a protected class, (2) he was treated differently from a similarly situated member of an unprotected class, and (3) the defendants were motivated by a discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). But Taylor does not allege he is a member of a protected class, so he is essentially bringing a class-of-one equal protection clause claim, which is subject only to rational basis review. "A plaintiff alleging a class-of-one-equal-protection claim must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (citing *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) and *Srail v. Vill. of Lisle,* 588 F.3d 940, 943 (7th Cir.2009)). Liberally construing the complaint in Taylor's favor, he essentially alleges he was subject to disciplinary detention for fifteen months for no rational reason despite being similarly situated to other prisoners who did not merit disciplinary detention. His claim may not survive a dispositive motion or trial—since only irrational state action

violates the Equal Protection Clause.  But his complaint, taken as true at this stage, sufficiently states a class-of-one Equal Protection claim

With respect to the due process claim, the Seventh Circuit "has noted that an inmate's liberty interest in avoiding segregation is limited."  *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013).  "Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Id.* (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).  "In assessing whether disciplinary segregation amounts to a constitutional violation, this court looks to the combined import of the duration of the segregative confinement *and* the conditions endured."  *Id.* (internal quotation omitted).  When terms of segregation exceed six months, the Court considers the conditions of confinement "to determine if they were so extreme as to implicate due process considerations."  *Id.* at 744.

The Seventh Circuit has distinguished between alleged conditions that are "disgusting" and those that "although restrictive, were not unsanitary or otherwise disgusting."  *Jackson v. Anastasio,* 150 F.4th 851, 860 (7th Cir. 2025) (citing *Kervin v. Barnes*, 787 F.3d 833, 835-36 (7th Cir. 2015)).  In *Jackson,* the conditions of the segregation cells compared to those in general population were disgusting—consisting of "feces and urine on the walls, constant noise with inmates banging on doors, water contaminated with bacteria that causes Legionnaire's disease, and roaches and mice" with inmates throwing feces and urine at other inmates in the hallways.  *Id.*  On the other hand, while more severe

than the conditions in general population, something less extreme—such as having "a confrontational cell mate" and "weekly access to the shower and prison yard,"—does not meet the atypical and significant hardship standard. *Hardaway*, 734 F.3d at 744.

Here, Taylor alleges that he was held in the RHU for more than 15 months (approximately 450 days).  Dkt. 1 at 9.  Because his confinement exceeds six months, the Court considers the conditions of confinement to determine if they are extreme enough to implicate due process considerations.  *See Hardaway*, 734 F.3d at 744.  To the extent that Taylor experienced limited access to educational programming, job opportunities, certain commissary items, recreational activity, and religious services, those conditions on their own do not meet the atypical and significant hardship standard.  Dkt. 1 at 9-10.  But he alleges more, including conditions that may meet the standard articulated by the Seventh Circuit in *Jackson*, including black mold in the cell, pest infestation (ants, roaches, and spiders), contaminated water, dirt buildup causing ventilation issues, inadequate clothing to keep him warm during extremely cold temperatures, and extremely warm temperatures.  *Id.* at 11-12.  Additionally, Taylor alleges that he suffered sensory and human contact deprivation.  *Id.* at 11; *see Wilkinson v. Austin*, 545 U.S. 209, 214-15 (2005) (finding that a prisoner's liberty interests are implicated where they are deprived of virtually all sensory stimuli or human contact for an indefinite period of time).  As alleged, multiple of these conditions are allegedly extreme enough at this stage to satisfy

9

the standard discussed in *Jackson.* Therefore, Taylor's Fourteenth Amendment due process claims may proceed against the Defendants at this time.

The claims that shall proceed are the following:

The Fourteenth Amendment Equal Protection Clause and due process claims **shall proceed** against Warden Allen, Classification Supervisor Ballenger, Unit Team Manager Shauer, and Case Worker Sarten.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through August 4, 2026,** in which to file a motion to reconsider the screening order.

### IV. CONCLUSION AND SERVICE OF PROCESS

The following claims are proceeding in this action: Fourteenth Amendment Equal Protection Clause and due process claims against Warden Allen, Classification Supervisor Ballenger, Unit Team Manager Shauer, and Case Manager Sarten. All other claims have been dismissed.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Warden Allen, Classification Supervisor Ballenger, Unit Team Manager Shauer, and Case Manager Sarten in the manner specified by Rule 4(d). Process shall consist of the complaint filed on February 9, 2026, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Indiana Department of Correction employees electronically.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date:  7/8/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

QUENTIN L. TAYLOR
178973
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronic service to Indiana Department of Correction:
        Warden Trent Allen
        Classification Supervisor Ballenger
        Unit Team Manager Shauer
        Case Manager Sarten f.k.a. Knotts
        (All at Pendleton Correctional Facility)